BLACKSTAD MERCANTILE CO. v. J. W. PORTER & CO.

(Court of Civil Appeals of Texas. Galveston. June 5, 1913. Rehearing Denied June 19, 1913.)

1. PRINCIPAL AND AGENT (§ 148*)—CONTRACT —SEPARATE ORAL AGREEMENT.

A provision of a written contract of sale that no statement by the seller's agent should be considered a part of the agreement unless written into the contract bound the buyer so that promises by the seller's agent, not made a part of the contract, did not bind the seller.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. § 148.*]

2. SALES (§ 52*)—VALIDITY—EVIDENCE—MISREPRESENTATIONS.

Evidence, in an action for the purchase price of jewelry sold to defendant, held not to show that the plaintiff's agent made any false representations as to warranties contained in the contract or as to the character of the jewelry sold.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 118–144, 1045; Dec. Dig. § 52.*]

3. SALES (§ 177*) — REFUSAL TO ACCEPT GOODS.

Where a contract of sale was completed before acceptances for the price were sent to the purchaser or any claim made by the seller that the payments should have been made at times different from those specified in the contract, whether made intentionally or by mistake, it would not affect the rights of the parties; the buyer having refused to take the goods before the acceptances were sent to him and would have refused to sign them if they had been in accordance with the terms of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 445–450; Dec. Dig. § 177.*]

Appeal from Burleson County Court; R. J. Alexander, Judge.

Action by the Blackstad Mercantile Company against J. W. Porter & Co. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

W. M. Hilliard, of Caldwell, for appellant.

PLEASANTS, C. J. This suit was brought by the appellant against the appellee to recover the sum of $144, the purchase price of goods sold and shipped by appellant on the written order of appellee. The trial in the justice court, in which the suit originated, resulted in a judgment in favor of the defendant, and upon appeal and trial de novo

in the county court a like judgment was rendered.

In answer to plaintiff's suit, which was pleaded orally in the justice court, the defendant pleaded: "That the defendant was induced by fraud and the misrepresentations of the plaintiff and its agent to sign what he understood to be an order for certain jewelry, the terms of which were to be first accepted by the plaintiff, after which the defendant was to sign certain acceptances described in said order to be due and payable in 4, 6, 8, 10, and 12 months, respectively. That the defendant understood when he signed said order for said goods, and it was so represented to the defendant by the plaintiff's salesman, H. H. Hancock, that said jewelry was good, merchantable goods and was guaranteed to wear for five years, and that he was to have 12 months in which to pay for the same, when in truth and in fact said jewelry was not even plated ware, but was the cheapest kind of brass and was worthless, and only 10 months were given defendant to pay for same. That the defendant was induced to sign said order for said goods by the false and fraudulent representations of the plaintiff's agent and salesman, H. H. Hancock, being busy at the time and relying upon the said H. H. Hancock's representations that said jewelry was guaranteed for five years. That shortly after the plaintiff's agent, H. H. Hancock, had gone, and as soon as the defendant had time to do so, he carefully read over the duplicate of said order contract and discovered that said jewelry was not warranted at all, but that the plaintiff only agreed to exchange such articles as failed to give satisfaction, provided they were returned within five years from date of purchase. That as soon as he made this discovery he wrote a letter to the plaintiffs canceling said order. That notwithstanding this the plaintiff shipped said goods and sent the defendant what purported to be five acceptances, but which were in fact five sight drafts, payable, respectively, 2, 4, 6, 8, and 10 months, instead of in 4, 6, 8, 10, 11, and 12 months, as agreed in said contract. That the defendant refused to sign said acceptances or drafts and refused to take said goods, and notified the plaintiff that said goods were at Gause subject to their order. The defendant says that the five acceptances sent the defendant by the plaintiff were not in accordance with the original contract and order signed by the defendant, and that he is not bound thereby. The defendant further says that said order or contract which he signed was without consideration and that he is not liable thereon."

By supplemental petition plaintiff replied to this answer as follows: "Plaintiff says that some time after the jewelry called for in the contract had been sent the defendant J. W. Porter, and after the 10 days allowed the defendant J. W. Porter had expired in which to pay for the jewelry in cash, the said defendant having failed to send the cash or the acceptances called for in the contract, the plaintiff's agent prepared some acceptances and sent the defendant J. W. Porter, and in so doing made a clerical error and sent five acceptances in place of six, as called for in the contract. That shortly afterwards, and without hearing from the defendant J. W. Porter, the plaintiff had six acceptances prepared and sent for the said J. W. Porter to sign. That the said six acceptances were identical with the ones called for in the contract in every respect, and that plaintiff's attorney, W. H. Hilliard, talked with said defendant J. W. Porter and told him that he had the said six acceptances called for in the contract, and that while the time had expired, if the defendant J. W. Porter, would sign same, plaintiff would accept said acceptances in settlement of said claim, or that if the defendant wanted to pay cash plaintiff would yet allow him the 6 per cent. called for in the contract. That the defendant J. W. Porter then and there refused to sign said six acceptances called for in the contract, and refused to pay cash at a discount of 6 per cent. as called for in the contract for cash within 10 days. The record discloses the following facts: The goods, which consist of a showcase and a number of pieces of jewelry, were shipped by appellant, on a written order or contract signed by appellee and a sales agent of appellant, on August 18, 1911. This order in addition to a list of the goods ordered and the price to be paid therefor, which aggregates the sum of $144, contains the following stipulations:

"Warranty. Any of the above articles failing to give purchaser reasonable satisfaction must be promptly returned to the Blackstad Mercantile Co., who will replace same free of charge if returned within five years from date of purchase.

"Exchange Privilege. Any of the above goods may be returned to the Blackstad Mercantile Co. to be exchanged for any jewelry in their stocks at any time within one year from date of invoice. * * * "

"Terms of Settlement. A discount of 6 per cent. will be allowed for cash in ten days, or settlement of this account may be made in 6 equal installments, due in 4, 6, 8, 10, 11 and 12 months from date of invoice, providing purchaser sends us promptly on arrival of jewelry at destination his 6 acceptances covering above payments, payable to our order at St. Louis, Mo. If settlement is not made as above provided this account is due and payable in cash.

"Date, Aug. 18. Blackstad Mercantile Co., St. Louis, Mo.—Gentlemen: On your approval of the terms and conditions of the above order, please deliver to us, at your earliest convenience, f. o. b. factory or distributing

point, the goods above listed on the above terms. We agree that no statement made by ourselves or the salesman will be a part of this agreement unless written in the original order received and accepted by you. H. H. Hancock, Salesman. [Signed] J. W. Porter & Co., Customer. Post Office, Gause, Route 1.

"Ship jewelry to Gause case by express. To Gause. Jewelry by express."

The defendant, J. W. Porter, testified that on the day he executed the contract he was very busy waiting on customers, and that plaintiff's agent Hancock got him to sign the contract; that said agent kept on talking and telling him what a good contract it was and how much money other country merchants had made out of it, and that "plaintiff would take up and make good any of the jewelry that would tarnish or be in any way unsatisfactory within five years"; that he was too busy to talk to the agent, and that when the contract was read to him by the agent he understood it to guarantee the jewelry for five years (that is that he could return any article that did not give satisfaction and get credit for invoice price therefor). After the contract had been executed and the agent had left, the defendant read over the contract and found that the only guaranty was to replace any jewelry that did not give satisfaction if returned in five years. When he made this discovery he decided to countermand the order and on the same evening wrote plaintiff the following letter canceling the order: "Gause, Texas, Aug. 18th, 1911. Blackstad Mercantile Company, Chicago, Ill.—Gentlemen: Please cancel order to-day given your Mr. Hancock. After duly considering the matter I do not believe these goods will move in a satisfactory manner. Yours truly, J. W. Porter & Company." This letter was by mistake addressed to plaintiff at Chicago and was not received until after the goods were shipped. The goods were shipped on August 19th and reached Gause a few days thereafter. Defendant refused to receive them and notified plaintiff on August 26th that he would not take them from the express office, and that they were subject to plaintiff's order.

The terms of payment as originally written or printed in the order provided that, if defendant desired to pay for the goods in installments rather than pay cash at 6 per cent. discount, he should send his five acceptances covering five equal installments of the purchase money and due in 2, 4, 6, 8, and 10 months, respectively. At defendant's request this was changed so as to provide for six installments evidenced by acceptances due in 4, 6, 8, 10, 11, and 12 months.

Some time after the goods had reached Gause, defendant not having paid for the goods or sent the acceptances as provided in the order, plaintiff had prepared and sent him five acceptances as originally provided in the order and requested him to execute and return them. These acceptances were not returned by the defendant, and in a short time plaintiff prepared and sent him six acceptances in accordance with the terms of the contract and asked that defendant either pay the cash price for the goods or send his six acceptances as provided in the contract. This the defendant refused to do, and thereupon plaintiff brought this suit to recover the contract price of the goods.

In regard to the alleged fraud and misrepresentations of the plaintiff's agent, Hancock, the defendant testified as follows: "The agent, H. H. Hancock, was false in this: First. He said that the goods were guaranteed to be first-class as carried in all stores. Second. He was false also in that he said that the last payment was 12 months off and that if the jewelry was not good not for me to pay for it. * * * The agent read the guaranty to me that the Blackstad Mercantile Company would take up and make good any part of the jewelry that would tarnish or be in any manner unsatisfactory in 6 years. I told him that the company was in St. Louis, and possibly would not recognize what he said when the time came, and he replied not for me to pay for it if the jewelry was not good. I don't know as the agent, H. H. Hancock, lied at all about the acceptances, but how am I going to avoid paying these acceptances if I sign them. I don't know if the company Blackstad Mercantile Company made a mistake in sending me the five acceptances or if they did it purposely. Yes, I see that the printed form of the contract that I signed called for five acceptances and I had the agent, H. H. Hancock, to scratch it out and write six. I do not know if it was a clerical error but I know that it changed the contract and gave me a right to refuse the goods. No, I never did write the Blackstad Mercantile that they had made a mistake and sent only five acceptances when the contract called for six. I did not write them anything about it. I don't know if they found the mistake and corrected it themselves. Yes, I had refused the jewelry before they sent the five acceptances to me. Yes, I refuse now to sign the six acceptances called for in the contract and I refuse to pay in cash at a discount of 6 per cent. and you pay all the cost of this suit. * * * I am a young man and can read and write and my eyes are good. I directed the changes that were made in the regular printed form of the contract and I was present and the agent, H. H. Hancock, made the changes. There was nothing to keep me from seeing the contract and reading it at the time I signed it. The contract was right before my eyes and was not covered up at the time I signed it." We think this evidence wholly fails to establish defendant's plea that he was induced to sign the order by the fraud and misrepresentations of plaintiff's agent.

[1] The contract expressly provides that no statement made by plaintiff's agent, unless it was written in the contract, should be considered as a part of the agreement. Defendant is bound by this provision of the contract, and, if plaintiff's agent had made promises or agreements other than those in the written contract, plaintiff would not be bound thereby.

[2] But the evidence fails to show that the agent made any false statements or representations in regard to warranties contained in the contract or the character of the jewelry. His statement as to the five years' guaranty, according to the defendant's testimony, was the same, in effect, as that written in the contract, and it is immaterial that defendant understood from the reading of the guaranty by the agent that he could return any unsatisfactory article in five years and get credit for its invoice price. There is no evidence as to the character of the goods shipped. They had not been seen by the defendant, and there is no claim that they were not the exact kind of goods described in the contract.

In the letter written by the defendant countermanding the order, there is no intimation of any fraud or misrepresentation on the part of the agent, Hancock; the only reason given in this letter for canceling the order being that after duly considering the matter defendant had concluded that "the goods would not move in a satisfactory manner." It is clear that the fact that the first acceptances sent by plaintiff to the defendant were not in accordance with the terms of the order is no evidence of fraud in the procurement of the contract and furnishes no ground for its repudiation. We think it is fairly inferable from the evidence that the sending of five instead of six acceptances was purely a mistake due to the fact that the printed orders used by plaintiff provided for five instead of six, and in preparing these acceptances the change in the usual form of such orders was overlooked. But, be this as it may, it is clear that the sending of the five acceptances instead of six in no way affected the obligations of either party to the contract.

[3] The contract of sale was executed and completed before the acceptances were sent, and any claim by plaintiff that the payments for the goods should be made at times different from those specified in the contract, whether made by mistake or intentionally, could not affect the rights of either party to the contract. Plaintiff was not required by the contract to prepare the acceptances, but defendant was under obligation either to pay cash for the goods or send plaintiff his acceptances for the purchase price as provided in the contract. Before the five acceptances were sent by plaintiff, defendant had refused to take the goods, and his own

testimony is that he would not have signed the acceptances if they had been in accordance with the terms of the contract.

There being no evidence sustaining appellee's plea of fraud, and the execution of the contract being admitted, and appellant, having fully complied with its obligations under said contract, is entitled to recover of appellee the purchase price of the goods as stipulated in the contract.

It follows that the judgment of the court below should be reversed and judgment here rendered in favor of appellant for the amount of the purchase price of said goods, with interest as claimed in the petition, and it has been so ordered.

Reversed and rendered.