### NATIONAL NOVELTY IMPORT CO. v. GRIFFIN & GRIFFIN. (No. 7179.)

(Court of Civil Appeals of Texas. Dallas. June 13, 1914.)

1. APPEAL AND ERROR (§ 501*) — PRESENTATION OF GROUNDS OF REVIEW — INSTRUCTIONS—EXCEPTION.

Under Acts 33d Leg. c. 59, amending Rev. St. 1911, art. 2061, to provide that the action of the court on instructions shall be regarded as approved, unless excepted to as provided by Rev. St. 1911, art. 1970–1974, as therein amended, relating to the time and manner of submitting instructions, the refusal to give a special charge cannot be reviewed on appeal, where there was no exception thereto in the trial court and preservation of the objection by bill of exception.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. § 501.*]

2. PRINCIPAL AND AGENT (§ 190*) — ACTION FOR PRICE—EVIDENCE — SEPARATE AGREEMENT.

In an action to recover for goods sold under a contract providing that no statement by the salesman should be part of the contract unless written in the original order accepted by the seller, in which defendant set up a condition attached to the contract by the salesman that the seller would give an indemnity bond, evidence for defendant, as to the circumstances under which such separate agreement was made and as to its nonperformance, was admissible.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 718–720; Dec. Dig. § 190.*]

3. PRINCIPAL AND AGENT (§ 103*)—AUTHORITY OF AGENT—CONSTRUCTION OF CONTRACT—PROVISION AGAINST COLLATERAL AGREEMENT.

A provision, in a contract for the sale of goods, that no statement made by the salesman should be a part thereof unless written in the original order received and accepted by the seller, and that the salesman's authority was limited to taking orders on the regular forms, did not exclude a written agreement by the salesman, and attached to the original contract on a separate piece of paper, that the seller would furnish an indemnity bond to the buyer, but referred only to verbal representa-

tions by the salesman; and hence such attached agreement became a part of the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278–293, 353–359, 367; Dec. Dig. § 103.*]

**4. SALES (§ 65*) — ACTION FOR PRICE — DEFENSES.**

The seller's failure to perform a written agreement, part of the contract of sale, whereby it was to furnish the buyer an indemnity bond, relieved the buyer from any obligation to take and pay for the goods.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 180; Dec. Dig. § 65.*]

**5. PRINCIPAL AND AGENT (§ 177*)—CONTRACTS —SEPARATE ORAL AGREEMENT.**

Where the seller's agent had authority to agree that the seller would furnish the buyer an indemnity bond, his knowledge thereof was in legal effect the knowledge of the seller, who was bound thereby.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

Appeal from Kaufman County Court; James A. Coley, Judge.

Action by the National Novelty Import Company against Griffin & Griffin. Judgment for defendants, and plaintiff appeals. Affirmed.

Bumpass & Crumbaugh, of Terrell, for appellant. Bond & Bond, of Terrell, for appellees.

TALBOT, J. Appellant filed its suit in the county court of Kaufman county, Tex., against appellee, and alleged that, under the terms of a contract entered into between appellant, under its firm or corporate name of Blackstad Mercantile Company, and appellee, it had sold and delivered to appellee certain goods, wares, and merchandise, consisting of jewelry, of the aggregate value of $294; that appellee promised and agreed to pay appellant said sum for said merchandise within 12 months from April 2, 1912; that said sum was past due and unpaid, and appellant prayed judgment therefor. Appellee filed general demurrer, general denial, and pleaded specially that one Hancock, as agent of appellant, had made a written contract with appellee to ship the goods described in appellant's petition, for which appellee was to execute acceptances or drafts; that as a part of the said contract, and attached thereto, H. H. Hancock, as agent and for the said Blackstad Mercantile Company, contracted and agreed in writing that for and in consideration of appellee's signing the said contract for the purchase of the goods, and before any payment should be made, and before any acceptance should be signed, appellant would execute and deliver a bond of indemnity, conditioned that the jewelry mentioned in said contract would be in fineness as therein described, and that appellant would faithfully discharge the terms and conditions of said contract; that said provision was written on said contract and attached thereto, and, if same was not now at-

tached, the contract sued on was a forgery by alteration, and that a fraud had been perpetrated on appellee. Appellee pleaded that said bond had never been given nor delivered; that they never had received any jewelry from appellant; and that the act of appellant in shipping the jewelry, without first giving said bond, was a fraud on appellant. Appellant filed a demurrer to appellee's answer, and entered a general denial to the other allegations. The case was tried by a jury and verdict rendered for appellee, on which judgment was rendered Appellant filed a motion for a new trial, which was overruled by the court, to which action of the court appellant in open court excepted and gave notice of appeal.

The first assignment of error is as follows: "The court erred in failing to give plaintiff's special charge herein, to wit: 'Gentlemen of the Jury: You are instructed in this case that the plaintiff having proven its case by legal and competent testimony, and the defendants have failed to offer any legal defense thereto, as required by law, you are therefore requested to find a judgment for the plaintiff in the sum of $294 and interest on same from January 1, 1913, at 6 per cent. per annum.'"

[1] The ruling of the court in refusing this charge cannot be reviewed by this court. No exception appears to have been taken to the court's action, and under the provision of chapter 59, Acts 33d Legislature, the failure of the court to give the requested charge must be considered as waived. Article 2061 of the act referred to provides:

"The ruling of the court in the giving, refusing or qualifying of instructions to the jury shall be regarded as approved unless excepted to as provided for in the foregoing articles."

That the refusal to give a special charge cannot be made available on appeal, since the passage of said act, unless such refusal is excepted to in the trial court and the point preserved by bill of exception shown in the record on appeal, is affirmed by the following cases. Mutual Life Ins. Co. v. Rhoderick, 164 S. W. 1067; Railway Co. v. Galloway, 165 S. W. 546; Saunders v. Thut, 165 S. W. 553; Roberds v. Laney, 165 S. W. 114; Railway Co. v. Crutchfield, 165 S. W. 551; Railway Co. v. Love, 169 S. W. —— (decided by this court, but not yet officially reported).

The second assignment of error charges that the court erred in permitting —— Griffin, one of the defendants, to testify in this case, over the objection of plaintiff, after he had acknowledged to have signed the contract introduced herein as follows:

"That at the time said contract was executed by him, one H. H. Hancock called at his place of business in Elmo, Tex., and claimed to be a representative of the plaintiff, and promised, verbally, that if the defendant would make the contract, that he did in this case, the plaintiff would furnish a good and sufficient bond that the said plaintiff would carry out the terms of said contract. And that the said H. H. Hancock wrote on a piece of yellow paper attached to said contract something like this: 'Plaintiff will make bond and send it to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the Citizens' Bank at Elmo to be inspected by the defendant or his attorney.' "

The proposition under this assignment is: "The contract being in writing and limiting the agent's authority to changes written in the contract, evidence of verbal statements of the agent, or of written memorandum on a separate sheet of paper attached to the contract, which verbal statements or written memorandum would materially change the terms of the contract, was not admissible."

There is a provision in the contract executed by the parties for the sale and purchase of the goods for which plaintiff seeks to recover, as follows:

"We agree that no statement made by ourselves or the salesman will be a part of this agreement, unless written in the original order received and accepted by you which we have read and found satisfactory, and we understand the authority of your salesman is limited to taking orders for you, on your regular order forms."

And appellant's proposition, above stated, is predicated and sought to be sustained in this case upon that provision of the contract. The defendants alleged in their answer under oath:

"That, as a part and condition attached to the said contract on the regular order forms of the Blackstad Mercantile Company, the said H. H. Hancock, as agent and for the said Blackstad Mercantile Company, contracted and agreed that for and in consideration of these defendants signing the said contract for the said jewelry, and before any payment should be made, and before any acceptance should be signed, the said Blackstad Mercantile Company would execute and deliver a good and sufficient bond of indemnity, the condition of which would be that the jewelry as set out in said order and contract would be in fineness as therein described, and that the said Blackstad Mercantile Company would faithfully discharge any of the terms and conditions of the said contract. That said provision or condition that the said plaintiff would execute and deliver a bond was written on said contract, and attached thereto, and, if same is not now attached to same, the contract sued upon is a forgery by alteration, and a fraud perpetrated upon this defendant, and done for the purpose of deceiving and defrauding these defendants and to get them to sign said contract."

They further alleged that the bond of indemnity was never given, and that plaintiffs, though often requested, declined and refused to execute the same. Under these allegations, one of the defendants, C. F. Griffin, was alleged to testify that:

"On April 2, 1912, one H. H. Hancock called at the defendant's place of business and represented himself as the agent of the Blackstad Mercantile Company. After showing me samples of his goods, wares, and merchandise and making representations as to their fineness, and before he presented the contract for me to sign, he stated and agreed that in consideration of me signing the said contract for the said jewelry, and before I should receive the goods, and before any payment should be made, and before any acceptance should be signed, the Blackstad Mercantile Company would execute and deliver to me a good and sufficient bond of indemnity, in the amount of the bill of jewelry, the condition of which would be that the jewelry, as set out in their contract, would be as therein described, and that the said Blackstad Mercantile Company would faithfully discharge all of the terms and conditions of

the said contract. That this agreement was attached to the original contract on a yellow piece of paper and written in the following words: 'The plaintiff will furnish a bond to Griffin & Griffin, and same to be mailed or sent to the bank at Elmo, to be inspected and approved by them or their attorney.' Mr. Hancock told me that the writing would insure the delivery of the bond which he had described, and the writing on the contract was intended and agreed to be for the faithful performance of the plaintiff in carrying out the contract as set out in the order attached. After he made the notation for the delivery of the bond on paper and attached it to the order and made it a part of the contract, I signed the contract. * * * A few weeks after signing the contract, the goods arrived at the express office at Elmo, and I declined to take them out until the bond had been placed in the bank at Elmo, as contracted. A few days later, Mr. Hancock returned to Elmo, and asked me if I had received the goods. I told him that I had not, for the reason that his company had not sent the bond as agreed. Mr. Hancock stated that he was surprised to learn that the company had not done that, and that he would write them and have them to send the bond. I called at the bank at Elmo several times for the bond, but it was never delivered to me. Yes, the plaintiffs were strangers to me, and I required the bond to indemnify me from any breach of the plaintiffs in not carrying out the terms and conditions of their contract. Yes, the paper on which the memorandum for the bond was written, and which was attached to the contracts here in evidence, is similar to that paper [here witness was shown a yellow piece of paper], on which was written the following words: 'Take Notice. Every order must have one of these blanks attached to it properly filled out and anything you write about the order must be on this sheet. Use back of sheet for additional remarks, if any. [Signed] Blackstad Mercantile Co.' "

In this connection the defendants offered in evidence the contract signed by the parties, which showed four or five pin holes in the upper left-hand corner of the same, and a perforation at the top where something had been torn off.

[2-4] This testimony, which was objected to, was, under the allegations of the defendants' answer, admissible and sufficient to authorize the verdict of the jury in favor of the defendants. The agreement written on the "yellow paper" attached to the contract for the purchase of the goods according to this testimony became a part of said contract, and the failure of the plaintiff to comply therewith relieved the defendants from any obligation assumed by them to take the goods. This agreement was not a verbal, but a written agreement, and not inhibited, especially under the facts shown, by the provision in the body of the contract, to the effect that no statement made by defendants or plaintiffs' salesman would constitute a part of the contract, unless written in the original order. This provision evidently had reference only to verbal statements of representations and not to any written agreement the salesman might make as a condition upon which a sale of his principal goods should take effect. At all events, we hold that, under pleadings and facts developed upon the trial of the case, the written agreement that the execution of

the indemnity bond by plaintiff should be executed and delivered to defendants as a condition of their purchase and acceptance of the goods was binding on plaintiff, and that, having failed to execute and deliver it in accordance with that agreement, defendants were not compelled to take and pay for the goods. This agreement in writing indorsed on the "yellow paper" that appellant should execute and deliver to appellee the indemnity bond, before appellee should become liable for the goods, having been attached to and made a part of the contract for the purchase of said goods, the fact that it may have become detached and not brought to the knowledge of appellant itself until after the goods were shipped, it appearing that appellee was in a way responsible therefor, would not materially affect the question.

[5] Hancock, the agent, having authority to make said agreement, his knowledge of it was in legal effect the knowledge of his principal, and it is bound thereby. The evidence upon the issue of whether or not the written agreement was in fact made was conflicting, but amply sufficient to sustain the jury's finding that it was. The case is distinguishable from Blackstad Mercantile Co. v. J. W. Porter & Co., 158 S. W. 216, cited by appellant, in the facts and not ruled thereby.

Believing the judgment should be affirmed, it is accordingly so ordered.