MISSOURI, K. & T. RY. CO. OF TEXAS v. CHURCHILL. (No. 67021.)

(Court of Civil Appeals of Texas. Galveston. Oct. 20, 1914. Rehearing Denied Nov. 25, 1914.)

1. APPEAL AND ERROR (§ 547*)—INSTRUCTIONS—REVIEW—BILL OF EXCEPTIONS—NECESSITY.

Error cannot be successfully assigned on the court's refusal to submit certain special issues to the jury, where no bill of exceptions was taken to the court's charge or to its refusal to give defendant's requests.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2427, 2429–2432; Dec. Dig. § 547.*]

2. CARRIERS (§§ 318, 346*)—TRANSPORTATION OF PASSENGERS — PERSON ACCOMPANYING PASSENGER TO TRAIN — INJURIES — NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to plaintiff while endeavoring to alight from a vestibuled passenger train as it was leaving a station to which plaintiff had gone to assist his mother and her other children aboard the train, by his being struck by a shed support as he swung out from the wrong side of the train in an endeavor to alight after the train had started, and in the presence of the conductor, evidence *held* to sustain a finding of negligence on the part of the conductor and of absence of contributory negligence on plaintiff's part.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314, 1401; Dec. Dig. §§ 318, 346.*]

3. CARRIERS (§ 304*) — TRANSPORTATION OF PASSENGERS — PREMATURE STARTING OF TRAIN.

Where plaintiff, to the knowledge of defendant's conductor in charge of a vestibuled train, boarded the train to assist his mother and her other children to a seat therein, it was the conductor's duty to hold the train a reasonable time to allow plaintiff to perform such duty and to disembark from the train, and, on discovering that the train had started before plaintiff had time to alight, the conductor was bound to stop the train and permit plaintiff to disembark.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1104, 1110–1114, 1124, 1242; Dec. Dig. § 304.*]

4. CARRIERS (§ 333*)—INJURY TO LICENSEES—ASSUMED RISK.

Where plaintiff boarded a vestibuled passenger train to assist his mother and her other children to a seat to the knowledge of the conductor, and he, having negligently started the train before plaintiff could perform such service and alight, refused on request to open the vestibule and permit plaintiff to get off on the right side of the train, whereupon plaintiff rushed to the opposite side, opened the vestibule, swung out, and was struck by a steel depot roof support, he did not assume the risk in attempting to alight from the train at the time, place, and manner he did.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1385, 1386, 1388–1397; Dec. Dig. § 333.*]

5. APPEAL AND ERROR (§ 1050*)—RECEPTION OF EVIDENCE—PREJUDICE.

Where plaintiff, having gone on a vestibuled train to assist his mother and her other children to a seat, attempted to alight after the train had started from the wrong side of the train, in the presence of the conductor, and there was evidence that plaintiff did not know of the proximity to the car of posts supporting the station roof or of their existence at the place, and that the conductor saw plaintiff while opening the vestibule door and attempting to alight, the issue of discovered peril not having been submitted to the jury, defendant was not prejudiced by the court's allowing the conductor to answer in the affirmative a question whether he knew, when he saw plaintiff attempting to open the door, that it would be dangerous for him to alight from that side of the train.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Galveston County; Edward F. Harris, Special Judge.

Action by S. A. Churchill against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Jno. T. Garrison, all of Houston, and John L. Darrouzet, of Galveston, for appellant. S. L. Staples, of Smithville, and Marsene Johnson, Elmo Johnson, and Roy Johnson, all of Galveston, for appellee.

McMEANS, J. Plaintiff, S. A. Churchill, brought this suit against the defendant, Missouri, Kansas & Texas Railway Company of

Texas, to recover damages sustained by him on account of the negligence of the defendant. He alleged, in substance, that he accompanied his mother and her two children to the Union Depot in the city of Galveston, where they intended to take passage on defendant's passenger train to their home in Smithville, and that he entered the train with his mother and her two children to assist them with their luggage and in finding seats, first apprising the conductor of this fact and the fact that he did not intend to become a passenger, and that, while he was so engaged, the conductor, without warning or notice to him, started said train in motion, and before he could get to the door of the car to alight from the train the conductor shut the vestibule door through which he had entered, and that, although the conductor was shutting the vestibule door when plaintiff first asked him to let him off, he continued to shut, and did thereafter finish shutting, the door, and that, although he requested the conductor to open the door and let him out, he (the conductor) failed and refused to do so and failed and refused to stop the train and let him off, but stood on the trapdoor of the vestibule, thus barring plaintiff himself from opening the door; that the momentum of the train was growing greater all the time; that in order to disembark, and not be carried away, he went on the platform of the car next to the one he had entered, opened the trapdoor and vestibule door on the opposite side of the train from which he entered, and, getting down on the car steps, he grasped the handholds on each side, and leaned back to see if he could get off in safety; and that just as he leaned back to look his head came in contact with an iron support of the shed under which the train had been standing, knocking him from the steps, and inflicting the injuries for which he sued. The grounds of negligence alleged were in permitting the train to start while plaintiff was inside the car without affording him a reasonable time to assist said passengers and alight therefrom, and without giving him notice that the train was going to start, in either of which events he could have alighted with safety; in closing the vestibule door while plaintiff was demanding the conductor to permit him to pass through it; and in using a track located in such close proximity to the iron support of the shed as to make the support dangerous to a person who might leave the train on the side upon which it was situated.

Upon the request of appellant the case was submitted to a jury upon special issues in the form of interrogatories, the issues submitted being as follows:

"(1) Did the plaintiff, before the train started, inform the conductor of the fact that plaintiff was not going on the train to Smithville?

"(2) Was the train held before the starting a reasonable length of time to allow plaintiff to get off the train?

"(3) Did plaintiff wait a reasonable length of time to allow the train to be stopped, after

plaintiff called out to the conductor that plaintiff wanted to be let off the train?

"(4) Was the defendant guilty of negligence toward plaintiff in using the track as close to the pillar or post as it was used?

"(5) Was plaintiff guilty of contributory negligence in his conduct after the train started?"

The sixth interrogatory propounded was as to what sum of money would reasonably and fairly compensate plaintiff for the injuries sustained by him, laying down in that connection definite rules to guide the jury in arriving at the measure of his damages.

The jury answered the first, third, and fourth questions in the affirmative, and the second and fifth in the negative, and in answer to the sixth found that a fair and reasonable compensation to plaintiff for the injuries suffered by him was $7,000. Upon the return of the verdict the court required a remittutur by plaintiff of $2,000, which was filed and entered, and thereupon the court rendered judgment in his favor for $5,000, from which the defendant, after its motion for a new trial had been overruled, has appealed.

Appellant's first assignment of error assails the action of the court in submitting interrogatory No. 4 for the determination of the jury, to wit:

"Was the defendant guilty of negligence toward plaintiff in using the track as close to the pillar or post as it was used?"

[1] The fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments are predicated upon the refusal of the court to submit to the jury special issues requested by defendant. No bill of exceptions was taken to the charge of the court or to the court's refusal to give defendant's special charges, and for this reason appellee objects to the consideration of these assignments.

In St. Louis, Southwestern Ry. v. Wadsack, 166 S. W. 42, the Texarkana Court of Civil Appeals had under consideration the question whether assignments of error based upon objections to the court's charge or predicated upon the refusal of the court to give special charges requested by the appellant, to which action bills of exception were not taken in the trial court and allowed and signed by the judge, could be considered by the appellate court. In a comprehensive opinion written by Associate Justice Hodges the following conclusion is reached:

"Heretofore the rulings of the court in giving and refusing charges was regarded as excepted to in every instance, without any express reservations by bill or otherwise. The effect of the amendment to article 2061 is to place the rulings of the court in giving or refusing charges in the same category with other rulings not appearing of record as to the formalities required for their consideration on appeal. Appellate courts can now no more review the action of the trial court in giving or refusing charges than they can the rulings admitting or excluding testimony, without proper bills of exception. It also follows that bills of exception relating to the giving or refusing of charges must conform to the requirements provided by statute for bills of exception generally."

See, also, Novelty Import Co. v. Griffin, 168 S. W. 85.

The court in the cases cited properly, we think, refused to consider the assignments. We will not pause to set out here the reasons for thus deciding, and content ourselves by referring therefore to the cases referred to. The assignments cannot be considered.

Appellant's second, third, and fourth assignments challenge in different ways the sufficiency of the evidence to justify the verdict and judgment. This requires a review of the facts.

[2] Appellee formerly lived at Smithville, a town on appellant's railway line, but at the time of his injury, and for some time prior thereto, lived in the city of Galveston, and was engaged as switchman on another railroad entering that city. His mother and her other children resided in Smithville. Prior to April 8, 1913, plaintiff's mother and two of her children visited plaintiff in Galveston, and on that date started to return to their home. Plaintiff accompanied them to the Union Station in Galveston, from which all trains, including defendant's, took their departure, to assist them with their grips, bundles, and packages, of which there were several, and a short time before the time for departure of the train he, accompanying them, carrying a large grip and a box in which there was a small dog, entered the gate and proceeded to the car door through which they intended to enter the train. Here plaintiff spoke to the conductor, one Tabor, with whom he was well acquainted, having been his neighbor when both lived in Smithville; plaintiff's mother having known him for 17 years. Tabor asked plaintiff if he was going home, meaning Smithville, to which the latter replied that he was not; that he was then living in Galveston; and that he was there only for the purpose of assisting his mother and the children on the train. Plaintiff, prior to the time of this conversation, had set the grip he was carrying on the ground, and had gone down to the engine and procured the fireman to carry the dog to Smithville, and upon his return proceeded to assist his mother and the children on the train, he himself carrying the large grip, and after they were in the coach began arranging their seats and baggage, but before he had accomplished this the conductor gave the signal for starting the train, and the train began to move out. Hastily kissing his mother good-bye, the plaintiff walked rapidly toward the end of the coach from which he had entered, and just as he reached the door the conductor was closing the vestibule door, through which plaintiff expected to make his exit. He at once called to the conductor to stop and to open the door and let him off, but the conductor, although he heard him, did not reply, nor did he heed plaintiff's requests, but took his stand on the trapdoor, which had to be raised before the vestibule door could be opened. At this juncture a man with whom the conductor had been talking, and who was standing in the gangway when plaintiff approached, stepped on the platform of the car just in advance, and onto the trapdoor on the left. Plaintiff, seeing that the conductor was making no effort to stop the train or to open the door and let him off, passed to the platform of the car next in front, and as both doors on the left were blocked, one by the conductor and the other by the man, he lifted the trapdoor and opened the vestibule door on the right, and, going down on the steps, he caught the handholds on each side, preparatory to swinging off, and leaned backward to see if he could safely get off at that place, and just as he did this his head came in contact with an iron support of the shed under which the train had been standing and was then moving, and which was 13 inches from the side of the coach, knocking him from the steps and to the ground, and inflicting damage upon him to the amount of the judgment. The train was what is known as a vestibule train, and all the vestibule doors on the right-hand side had been kept closed, while those on the left had been opened to allow the entrance of passengers from that side. It was usual and customary to leave the doors on the left side open until the train reached the registry station, some distance down in the yards, where the trains usually stopped, but plaintiff, seeing the conductor closing the doors, supposed the train would not stop there, and would not stop at all until it reached Forty-Second street, or the station of Oyster, down the Island; hence his anxiety to get off at the time and place he attempted it. While he knew the shed was held up by supports, he did not know of the position of the support that hit him, nor that any of them were close enough to the car to strike him while making his descent from the train, but the defendant did. The conductor observed plaintiff opening the vestibule door on the right, but said nothing, and did nothing to stop him.

There was some conflict in the evidence, but we have stated only the facts which most strongly support the plaintiff's case; for, if these warranted the verdict and judgment in his favor, the case must stand, even though there may have been evidence upon which the jury might have found against him.

[3, 4] Our conclusion, based upon the foregoing facts, is that the evidence was sufficient to support the finding of the jury that the appellant was guilty of negligence toward plaintiff which proximately caused his injuries, in failing to hold the train a reasonable time to allow him to seat his mother and her children and to disembark therefrom, and in failing to stop the train and let him off when the conductor discovered that he had not gotten off, and that in the circumstances detailed plaintiff was not guilty of contributory negligence, nor did he assume the risk

of injury in attempting to alight from the train at the time, place, and manner he did. The assignments must therefore be overruled.

[5] While the conductor, Tabor, was testifying for the defendant, he was asked the following question by plaintiff's counsel: "You knew when you saw the plaintiff attempting to open the trapdoor to the right that it would be dangerous for him to alight on that side, didn't you?" To which the witness answered, "Yes."

The question and answer were objected to by defendant upon the grounds that plaintiff had not sought to recover on the ground of discovered peril; that plaintiff knew the condition of the posts and shed; and that the conductor did not see plaintiff when he was opening the trapdoor or attempting to alight. The assignment cannot be sustained. There was proof that the plaintiff did not know the proximity of the posts to the car or of its existence at this place, and that the conductor did see plaintiff while he was opening the door and attempting to alight. The issue of discovered peril was not submitted as one of the special issues in the case, and the jury could not have based the findings they made upon the testimony objected to. If the admission of the testimony was error, it could have had no possible influence upon the jury in determining the issues submitted to them by the court's charge.

The remaining assignments complain of the verdict as being excessive. It is unnecessary to state in detail the extent of the injuries which the evidence shows plaintiff suffered. We have carefully considered the evidence upon this issue, and are of the opinion that the verdict, as reduced by the remittitur required by the lower court, is not excessive.

We find no reversible error in the record, and the judgment of the court below is therefore affirmed.

Affirmed.