WATERMAN LUMBER & SUPPLY CO. v. PHELPS. (No. 6763.)

(Court of Civil Appeals of Texas. Galveston. March 25, 1915.)

1. RAILROADS ⬥297—LICENSEES—COLLISION.

In an action against a lumber company operating a logging railroad for injuries sustained by the wife of an employé in a collision between the motor car on which she was riding and a hog on the track, evidence *held* to sustain special findings that defendant's servants were negligent as to the speed at which the car was operated and in failing to see the hog in time to avoid the collision.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 944–953; Dec. Dig. ⬥297.]

2. RAILROADS ⬥292 — LICENSEES — ASSUMPTION OF RISK—COLLISION.

A licensee injured while riding on a motor car, operated on defendant's railroad, in a collision with a hog on the track, did not assume the risk of injury from the negligence of the operator of the car; it being his duty to exercise ordinary care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 938; Dec. Dig. ⬥292.]

3. APPEAL AND ERROR ⬥263—RESERVATION OF EXCEPTIONS—INSTRUCTIONS.

Assignments of error, as to refusal to give special instructions, will not be sustained where

no bill of exceptions was taken to the action of the court below in refusing such instructions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. ☞263.]

Appeal from District Court, San Augustine County; A. E. Davis, Judge.

Action by J. A. Phelps against the Waterman Lumber & Supply Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Davis & Davis, of Center, for appellant. Blount & Strong, of Nacogdoches, for appellee.

PLEASANTS, C. J. This suit was originally brought by appellee against the appellant and Dock Iverson to recover damages for personal injuries to appellee's wife, alleged to have been caused by the negligence of the defendants. In his second amended petition, upon which the case was tried, plaintiff dismissed as to Iverson and only asked recovery against the appellant. This petition alleges, in substance: That defendant corporation is engaged in the manufacture of lumber, and in connection with the said manufacturing business owns and operates a railroad extending from the town of Grigsby, in Shelby county, into San Augustine county, and owned and operated on said railroad a "motor car" for the purpose of transporting its employés and other persons whom it might wish to transfer back and forth over said lines. That on or about said 16th day of November, 1912, the plaintiff wished to go from the point in San Augustine county where he was then working, to a point in Shelby county, and wished his wife, Nora Phelps, to accompany him. That defendant's motor car was on the track near where plaintiff was, and was in the charge of the defendant's general manager and its roadmaster. That, learning of the desire of plaintiff's wife to go to Waterman, the said officials invited her to accompany them to Waterman and to ride on said motor car. That, knowing that the defendant habitually prior to that time had transported persons over said lines, and that the general manager and roadmaster in charge thereof had authority to carry persons over said lines on said car, plaintiff's wife accepted said invitation and boarded the car, and that defendant's agents and employés permitted plaintiff's wife to become a passenger on said car, and the defendant thereby became bound to use ordinary care to transport her with safety and without injury. That plaintiff's wife was wholly unacquainted with the operation of said car, and unaware of any danger incident to riding thereon, and that she relied on defendant's servants and employés to operate said car with safety and without injury to her. That said car started just after dark, and notwithstanding same was only lighted with an ordinary lantern, and the defendant knew that hogs and other animals did frequently go upon and across said track, which was not fenced, that the employés of defendant caused said car to run at a high rate of speed, knowing that with the inadequate light a hog or other animal could not be discovered, if on the track, in time to prevent a wreck; and that the car did strike a hog, did wreck, and threw plaintiff's wife therefrom a distance of some 20 or 30 feet against the ground or railroad track, and severely injured her. That the defendant was negligent in not keeping a proper lookout, and in not discovering the hog before the contact of the car therewith, and in not stopping the car in time to prevent the collision; and that the negligence of the defendant in failing to stop the car after the hog was discovered on the track was negligence, and was the direct and proximate cause of the injury to plaintiff's wife. That plaintiff's wife, as the result of such negligence, and as the result of the wrecking of said car, sustained the following injuries: That her breast bone was broken, and she was injured internally in and about her chest; that her hip, near the joint, was broken, causing her to be a cripple for life; that her back was wrenched and injured permanently; that her womb was flexed, from which she will continue to suffer through life; that she suffered great physical suffering and mental anguish; that she was confined to her bed for eight weeks, and will continue to suffer throughout life. That plaintiff's wife, prior to said injury, was a woman about 40 years of age, in perfect health, and by reason of the injuries aforesaid she should recover of the defendant the sum of $2,975.

The defendant answered by general demurrer, and further answered that it did own and operate a motor car as described in plaintiff's petition, as a part of its equipment for the purpose of building and repairing its road, and carrying its tools and other things necessary in said work of repairing its tramroads, and to carry its employés engaged in said work to their work during the day and back to Waterman, the mill site, at night. That said car was not made for the transportation of passengers, but that it was dangerous to ride on same, a condition that was visible to all persons who saw or rode on said car; that the plaintiff, Phelps, was one of the employés of the road, who habitually rode on said car, and knew the condition of said car, the right of way, etc., and knew every danger incident to riding on said car; that said car was run by means of a gasoline motor, and was a work car, having a single seat, a plank running from the front end of the car to the back, on which persons riding would sit, their feet extending to the sides of the car, and there being room for some 10

or 12 persons to sit on said car; that on the evening in question, when the car was at a point near the boarding car and was about ready to begin its trip to Waterman, the plaintiff and his wife, Mrs. Nora Phelps, requested permission to ride on the motor car up the line in the direction of Waterman to a point where they wished to alight, and that such permission was at first refused, but they were finally told tnat if they rode on the car they would take the chances of being hurt; and that the husband of the said Mrs. Phelps was present, knew the condition of the road and the car, and the danger incident to the operation of the car, and insisted that she be given permission to ride on said car, and, under these circumstances, she, with the plaintiff, boarded the car. Defendant denied running the car at a reckless rate of speed, but says that, as the car was proceeding northward at a moderate rate of speed, a hog was seen to cross the road at a short distance in front of the car, and that the car was slowed down to enable the hog to pass, which it did, and everything seemed clear, but that just as the car got to the point where the hog had been seen to cross the track, another hog, which had been concealed in a hole in the ground so that it could not be seen from the car, came from the hole and ran rapidly across the track, and while crossing the track was struck by the car and killed, and the car was wrecked; that it was impossible, on account of the place the hog was in, to see it before it was seen, and when it was discovered it was impossible to stop the car before contact with the hog; that at the time of the wreck the defendant was using all due care and caution in the operation of the car; and that running over the hog was an unavoidable accident. For further answer, the defendant pleaded that her husband knew the danger incident to riding on such car, and the said Mrs. Nora Phelps knew same, and that they were mere licensees, and assumed all risks incident to riding on same. And for further answer the defendant denied that the injuries of plaintiff's wife, her broken ribs, and the other injuries complained of, were due to the wreck aforesaid, but says that same, if any she has suffered, were the result of a fall from a horse, sustained by the said plaintiff's wife some years prior to the wreck.

The cause was submitted to a jury upon special issues. The issues submitted to the jury were as follows:

"(1) Was the defendant company, through its agents operating said motor car at the time of the accident, guilty of negligence in operating said car, under the circumstances, at the rate of speed at which you find the same to have been operated? Answer this 'yes' or 'no.'

"(2) Was the defendant company, through its agents operating said car, guilty of negligence in failing to discover the hog, and the danger of the car coming in contact with same, in time to have been avoided, by the use of ordinary care, the accident and injury to plaintiff's wife,

if she was injured? Answer this 'yes' or 'no.'

"(3) Did the agent of the defendant company operating said motor car discover said hog at or near its railroad track in time to have avoided, by the use of ordinary care, the contact with same? Answer this 'yes' or 'no.'

"(4) If you answer either of the above three questions 'yes,' then you will answer the following question: What sum of money, if any, is the plaintiff entitled to as compensation for such injury, if any, as you find plaintiff's wife has received?

"(5) You will state by your verdict whether or not the failure to discover the hog that caused the wreck before it was discovered was due to the negligence of the parties operating the car."

To the first, second, and fifth questions the jury answered "Yes," and to the third question they answered "No." In response to the fourth question, they found that plaintiff was entitled to recover $1,000. Upon the return of this verdict judgment was rendered in accordance therewith in favor of appellee against appellant for the sum of $1,000.

[1] The evidence shows that appellee was an employé of appellant, and that his wife kept a boarding car on the line of appellant's tramroad, in which meals were served to employés of appellant engaged in the work of cutting and loading logs for transportation to appellant's lumber mill. On the day of the accident in which appellee's wife was injured, Mr. Pargeter, the general manager of appellant corporation, and Mr. Iverson, its trainmaster, came by the place at which appellee's wife was keeping her boarding car in a motor car owned by appellant. This car was one of two motor cars owned and operated by appellant. It was not the car generally used by appellant for carrying its employés to and from their places of work, but was principally used for carrying tools and supplies. However, there was a seat for passengers extending lengthwise through the center of the car for the accommodation of passengers, and employés of appellant and others, by permission, rode on this car. On the occasion in question appellee requested the general manager of the company to allow him and his wife to ride on said car to the town or station of Waterman on appellant's tramroad some 8 or 10 miles distant from the boarding car kept by appellee's wife. This request was granted, and appellee and his wife, with five or six others who were employés of appellant, boarded the car which left on its way to Waterman about 7 o'clock in the evening. This was about dark. The only light on the car was an ordinary lantern with a reflector which only lighted the track for 40 or 50 feet in front of the car. The night was cloudy. After the car had proceeded some distance on its way to Waterman, it ran over a hog, which ran across the track in front of the car, and was thrown off the rails and across the track, and most of the passengers, among them plaintiff's wife, were thrown violently on the ground. Mrs. Phelps, as a result of this accident, sustained injuries to her person which caused her much pain and suffering and from the result of which

she had not fully recovered at the time of the trial. At the time the car ran over the hog, it was running at the rate of 15 miles an hour. At the place at which the accident occurred there were trails crossing the track made by hogs and cattle going into and returning from a bottom near by. The car was operated by Iverson, appellant's trainmaster. He was familiar with the road and the conditions surrounding the place of the accident. He testified as follows:

"It was dangerous to run that car up that track that night. I knew it was dangerous. I had an ordinary lantern for light. I knew where the trail was that came out of the bottom that crossed the road. I knew that stock came from the bottom over the trail, hogs traveling at night. We could run about as well that night without the light as with it, because the moon was shining. I could have seen a couple of hundred feet up the track the way the car was loaded in the daytime. I had the right of way cleared at that place. A car running 15 miles an hour loaded like this was with the engine cut off and the brake not applied would run 100 feet. It would gradually go slower until it stopped."

There was evidence to the effect that if Iverson had been keeping a proper lookout he could have seen the hog in time to have avoided the accident by the use of ordinary care.

Without further setting out the testimony in detail, our conclusion is that the evidence is sufficient to sustain each and all of the findings of the jury before set out, and that none of said findings is against the great weight and preponderance of the evidence.

[2] This conclusion disposes of the first assignment of error presented in appellant's brief, which assails the verdict on the ground that "it is contrary to the evidence and against the great weight and preponderance of the evidence." Appellant's contention under this assignment that, appellee's wife being a mere licensee on appellant's car, she was bound to accept the conditions of the car, tramroad, equipment, and speed of the car as she found them, is not a correct statement of the law. Conceding that Mrs. Phelps was only a licensee and was therefore bound to accept the roadbed, car, and equipment in the condition in which she found them when she took passage thereon, she did not by going upon said car assume the risk of injury caused by the negligence of the operator of the car, and it was the duty of Iverson, who was operating the car, to use ordinary care to prevent injuring any person who was lawfully thereon. The fact that Mrs. Phelps was not a passenger for hire and that appellant was under no contract or obligation of any kind to carry her on the car did not relieve it of any duty to use ordinary care in the operation of the car. Under appellant's propositions it matters not how reckless may have been the speed of the car, nor how utterly wanting the operator may have been in the use of care to discover obstructions upon the track, appellant would not be liable for injury thereby caused appellee's wife. The authorities do not sustain this proposition, and such a rule would be violative of that principle of justice and right which holds every person responsible for his negligent acts or omissions by which another is caused to suffer injury and loss, when the injured party is himself guilty of no wrong and no negligence which contributes to the injury. Prince v. Railway Co., 64 Tex. 144; Kirby Lumber Co. v. Gresham, 151 S. W. 847.

[3] The second and third assignments of error, which complain of the refusal of the trial court to give special instructions requested by appellant, cannot be sustained because no bill of exceptions was taken to the action of the court in refusing to give the requested instructions. Railway Co. v. Churchill, 171 S. W. 517; Conn v. Houston Oil Co., 171 S. W. 520; O'Neil Engineering Co. v. City of San Augustine, 171 S. W. 524.

If a proper bill of exceptions had been preserved and the questions raised by the assignments properly presented, the assignments could not be sustained because the charge given by the court correctly submitted the issues raised by the evidence and the requested charges were not necessary to enable the jury in understanding and applying the law to the facts shown by the evidence.

We think there is no error in the record which requires, or would authorize, a reversal of the judgment of the court below, and said judgment must be affirmed

Affirmed.