KANSAS CITY, M. & O. RY. CO. OF TEXAS et al. v. CORN et al.  (No. 574.)

(Court of Civil Appeals of Texas. El Paso. May 11, 1916. Rehearing Denied June 8, 1916.)

1. CARRIERS ⬤218(5)—LIVE STOCK—LIMITATION OF LIABILITY—VALIDITY.

The limitation upon the carrier's liability contained in a contract for an interstate shipment of live stock at a reduced rate prescribed by the interstate commerce commission was valid and enforceable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696; Dec. Dig. ⬤218(5).]

2. CARRIERS ⬤218(7) — DAMAGE TO LIVE STOCK—AMOUNT—CONSTRUCTION OF BILL OF LADING.

Under a bill of lading stipulating that in case of total loss of any live stock covered by the contract for which the carrier should be liable the value was the actual cash value at the time and place of shipment, in no case to exceed $10 for each calf, and that in case of injury or partial loss the amount claimed should not exceed the same proportion, a recovery on findings of the jury that there was a depreciation of 5 per cent. on a valuation of $30, or $1.50 per head, limited the shipper's recovery to 5 per cent. of the agreed valuation, or 50 cents per head.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 946; Dec. Dig. ⬤218(7).]

3. CARRIERS ⬤218(7)—CARRIAGE OF STOCK—SHIPPING CONTRACT—CONSTRUCTION.

Such agreement in the shipping contract could have no application in the case of the deliberate conversion of an animal or its proceeds by defendant or its agents, so that it was not a loss within the meaning of the contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 946; Dec. Dig. 218(7).]

4. CARRIERS ⬤229(2)—LIVE STOCK—CONVERSION—DAMAGES.

In such case, the defendant railroad was liable for the value of the converted animal at destination in the condition in which it would have arrived but for its negligence or conversion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 964; Dec. Dig. ⬤229(2).]

5. CARRIERS ⬤229(2) — INJURY TO LIVE STOCK—DAMAGES.

A carrier of live stock, in the absence of any special contract, is liable for the full amount of its depreciation caused by its negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 964; Dec. Dig. ⬤229(2).]

6. CARRIERS ⬤218(7)—LIVE STOCK—ACTION FOR DAMAGES—CLASSIFICATION—ESTOPPEL.

In an action for damages to a shipment of live stock, party under a written contract at a reduced rate in consideration of a reduced valuation, the shipper having classified them in the contract as calves, could not claim that they should have been properly classified as older animals.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 946; Dec. Dig. ⬤218(7).]

7. EVIDENCE ⬤472(4)—CONCLUSIONS—PROVINCE OF JURY.

In an action for damages to a shipment of live stock, plaintiff's testimony, as to the value of the cattle at destination when they should have arrived if handled in the usual ordinary time and with due dispatch, was a mixed question of law and fact, invading the province of the jury, and inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2189; Dec. Dig. ⬤472(4).]

8. CARRIERS ⬤226—LIVE STOCK—ACTION FOR DAMAGES—PARTIES.

A joint owner of a shipment of live stock was properly joined as plaintiff in a suit for damages to the shipment; nothing in the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]) depriving him of his right to join in the suit and recover.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. ⬤226.]

9. CARRIERS ⬤228(3) — INJURY TO LIVE STOCK—EVIDENCE.

Plaintiff's testimony that there was no attempt to feed and water the stock at any other than a certain place, in view of his 36-hour release, whereby the carrier was authorized to keep the stock in the cars for that time without feed, water, or rest if necessary, was inadmissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ⬤228(3).]

10. APPEAL AND ERROR ⬤1051(3)—HARMLESS ERROR—ADMISSION OF EVIDENCE—ADMITTED FACT.

In such case, where it was admitted that defendant had not attempted to feed and water the cattle at any other than at a certain place, it could not have been reversible error to permit plaintiff to testify to that fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4164, 4167; Dec. Dig. ⬤1051(3).]

11. EVIDENCE ⬤258(1)—DECLARATIONS—ADMISSIBILITY.

In an action for damages to a shipment of live stock, testimony of plaintiff, as to a conversation which he heard between the conductor of his train and some employés of the road's receivers relative to the cause of the wreck which delayed the shipment, was inadmissible, where the conductor was not shown to be authorized to make such statements.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1006; Dec. Dig. ⬤258(1).]

12. CARRIERS ⬤212 — LIVE STOCK — NEGLIGENCE.

It is the duty of a carrier of live stock to deliver it with a reasonable degree of care and caution.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 918, 919; Dec. Dig. ⬤212.]

13. APPEAL AND ERROR ⬤768—ASSIGNMENTS OF ERROR — STATEMENT — ASSUMPTION OF TRUTH.

Where an assignment complained of the submission of an issue as to what was an ordinarily reasonable time for the transportation of cattle between two points, because there was no evidence as to what was an ordinarily reasonable time for such transportation, and such statement of fact was not contested by the appellee, the court, under the express provision of rule 41 for Courts of Civil Appeals (142 S. W. xiv), would assume it to be true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3103; Dec. Dig. ⬤768.]

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. TRIAL** ⊚═252(7) — INSTRUCTIONS — EVIDENCE.

In an action for damages to a shipment of live stock, where there was no evidence as to what was an ordinarily reasonable time for the transportation of cattle between two points, the issue as to reasonable time should not have been submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 602; Dec. Dig. ⊚═252(7).]

**15. APPEAL AND ERROR** ⊚═231(1) — OBJECTION—ISSUES.

Where the objection urged to the submission of an issue was too general, an assignment of error in its submission would be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1352; Dec. Dig. ⊚═231(1); Trial, Cent. Dig. §§ 194, 689, 690.]

**16. TRIAL** ⊚═251(2)—INSTRUCTIONS—ISSUES.

In an action for damages to a shipment of live stock, a requested instruction that, when the train came back to a point where the stock was watered, the receivers of the carrier then operating the road were required by the federal statutes to give the train crew not less than 10 hours consecutive rest, was properly refused, because irrelevant to the issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 589; Dec. Dig. ⊚═251(2).]

**17. TRIAL** ⊚═240—ARGUMENTATIVE INSTRUCTIONS.

Argumentative instructions are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. ⊚═240.]

**18. TRIAL** ⊚═194(1)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

Requested instructions on the weight of the evidence are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439, 440, 450; Dec. Dig. ⊚═194(1).]

Appeal from District Court, Knox County; Jo A. P. Dickson, Judge.

Suit by Frank Corn and another against the Kansas City, Mexico & Orient Railway Company of Texas and another. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

H. S. Garrett, of San Angelo, D. J. Brookreson, of Benjamin, and Baker, Botts, Parker & Garwood, of Houston, for appellants. A. C. Heath, of Ft. Worth, and Jas. A. Stephens, of Benjamin, for appellees.

HIGGINS, J. Frank Corn and Joe N. Payne brought this suit against the Kansas City, Mexico & Orient Railway Company of Texas, which we will designate as the "Orient," and the Galveston, Harrisburg & San Antonio Railway Company, to recover damages to a shipment of 15 cars containing 808 head of cattle shipped from Marathon, Tex., to Hardy, Okl. The shipment moved from Marathon to Alpine, Tex., over the line of the second-named defendant; thence to destination over the line of the Orient and its connecting carriers. Eleven cars of the shipment containing 592 head were shipped under a written contract at a reduced rate. In consideration of such reduced rate, it was stipulated in the bill of lading, as follows:

"In case of total loss of any of the live stock covered by this contract from any cause for which said first party shall be liable, it is agreed that the value thereof is the actual cash value of the same at the time and place of shipment, but in no case to exceed $100.00 for each horse, mare, pony, gelding, stallion, mule or jack; $50.00 for each ox, bull or steer; $30.00 for each cow; $10.00 for each calf or hog; $3.00 for each sheep or goat; and in case of injury or partial loss the amount claimed shall not exceed the same proportion."

In the contract the animals are designated as calves. The record is silent as to the nature of the contract under which the remaining four cars containing 216 head were shipped. The plaintiffs executed a 36-hour release, whereby the carrier was authorized to keep the cattle in the cars for that length of time without feed, water, or rest, if it became necessary so to do in order to reach destination. At the time of the shipment, the line of the Orient was being operated by receivers, who have since been discharged. In the order of discharge the property of said defendant was charged with all liabilities incurred by the receivers arising out of operation, and said defendant assumed all such liabilities.

With the exception of one head which was left at Benjamin, Tex., all of the animals were delivered alive at destination. Whatever injuries they sustained while in transit were occasioned by delays and improper handling to which they were subjected while in transportation over the Orient line. The evidence does not disclose any undue delay or improper handling of the shipment while in possession of the initial carrier and connecting lines of the Orient. The train transporting this shipment was delayed for some hours at Benjamin, Tex., on the Orient line, and at that point the cattle were unloaded and placed in pens for feed, water, and rest. There is evidence that these pens were muddy and sloppy and in an unsuitable condition. The delay at Benjamin was occasioned by a wreck some distance north of that place at Crowell Water Station. One animal was left in the pens at Benjamin which was thereafter converted by the receivers or their station agent at that point.

The cause was submitted to a jury upon special issues. The issues and answers thereto are here given, viz.:

"1. Was the shipment of cattle in question handled by the railway companies with a reasonable degree of care and caution? Answer: No.

"2. Were the railway companies negligent in handling the shipment of cattle in question? Answer: Yes.

"3. Were the stock pens and watering troughs therein at Benjamin, Tex., where the cattle were loaded, in a reasonable good condition? Answer: No.

"4. What was an ordinarily reasonable time for the transportation of the cattle from Marathon, Tex., to Hardy, Okl.? Answer: Sixty hours.

"5. Was the time that the cattle were in

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

transit from Marathon, Tex., to Hardy, Okl., in ordinarily reasonable time? Answer: No.

"6. How long were the cattle in question in transit from Marathon, Tex., to Hardy, Okl.? Answer: About 48 hours and 45 minutes.

"If you have found that the railway companies were negligent in handling the cattle in question and there were unreasonable delays in their transportation, then answer the following questions:

"7. What was the market value of the cattle at Hardy, Okl., at the time they arrived there, but for such negligence or delays? Answer: $30 per head.

"8. What was the intrinsic value of the cattle at Hardy, Okl., at the time they arrived there, but for such negligence or delays? Answer: $30 per head.

"9. What was the market value of the cattle at Hardy, Okl., at the time and in the condition that they arrived there? Answer: $28.50 per head.

"10. What was the intrinsic value of the cattle at Hardy, Okl., at the time and in the condition that they arrived there? Answer: $28.50 per head.

"11. What was the value of the one cattle left at Benjamin, Tex., and sold by the railroad company's agent to Mr. Moorehouse, but for its injuries, if any. Answer: $30. What was its value in the condition in which it was when sold? Answer: $25 in condition in which it was sold.

"12. Were the cattle handled by the railroad company in an ordinary reasonable degree of care, prudence, and caution? Answer: No."

Judgment was rendered in appellees' favor for $1,417.25, and the defendants have prosecuted this appeal therefrom.

[1] It is assigned as error that the court erred in the measure of damage applied. The assignment is well taken in so far as concerns the 592 head of calves covered by the written contract. The shipment was interstate, at the reduced rate prescribed by the Interstate Commerce Commission, and the limitation upon the defendant's liability contained in the contract was valid and enforceable. Railway Co. v. Harriman, 227 U. S. 664, 33 Sup. Ct. 397, 57 L. Ed. 690; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Railway Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Railway Co. v. Carmack, 176 S. W. 158.

[2] The findings of the jury establish that there was a depreciation in value of $1.50 per head, or 5 per cent. The value of the calves was limited to $10 per head, and, under the last clause of the provision in the contract, appellees in their recovery therefore should have been limited to 5 per cent. of such valuation, namely, 50 cents per head on the 592 head.

[3, 4] As to the animal left at Benjamin, the evidence discloses that it was sold by the station agent at Benjamin for $20 and the proceeds converted by the agent or the receivers. The cause in question can have no application in the case of a deliberate conversion, to their own use and benefit by the defendant or its agents, of property or its proceeds. It was not a loss within the meaning and purview of the contract. Furthermore, there is nothing to indicate whether this animal was one of the 592 head shipped under the contract containing the limited liability clause. Appellant is liable for the value of the animal at destination in the condition in which it should have arrived but for its negligence.

[5] As to the remaining 215 head, appellant is liable for the full amount of the depreciation caused by its negligence.

[6] It is suggested by appellees that the animals were too old to be regarded as calves. In reply to this, it is sufficient to say that they were classified in the contract as calves, and appellees are not in position to claim that their proper classification was as older animals.

[7] Upon the trial, the plaintiff Payne was permitted to testify to the value of the cattle at destination at the time they should have arrived if handled in the usual ordinary time and with due care and dispatch. The testimony of the witness was a mixed question of law and fact. It invaded the province of the jury, and its admission was error. Railway Co. v. Kimble, 49 Tex. Civ. App. 622, 109 S. W. 234; Railway Co. v. Roberts, 101 Tex. 418, 108 S. W. 808; Railway Co. v. Bigham, 138 S. W. 432; Railway Co. v. Beckham, 152 S. W. 229.

It was especially objectionable in view of the fact that the witness had previously testified that he did not know the usual and ordinary time required to transport such shipments over the route these animals traveled.

[8] The ninth and tenth assignments in effect are that judgment in favor of plaintiffs was improperly rendered because the cattle were shipped by Corn to F. B. Rogers, and there is no evidence that Payne was the lawful holder or owner of the bill of lading, or that he was the owner of the cattle at the time and place of shipment.

The testimony shows that Payne was a joint owner of the cattle with Corn, and, as such, he was properly joined in the suit. There is nothing in the Carmack amendment to deprive Payne of his right to join in the suit and recover.

[9, 10] There was no reversible error in permitting Payne to testify that there was no attempt to feed and water the cattle at any other place than Benjamin. This was an admitted fact, so it could not have been error to permit Payne to testify to it. Nevertheless, the pertinency of the testimony is not apparent, and it should therefore not have been admitted.

The twelfth assignment complains of the admission of testimony of the contents of a telegram which Payne said he tried to send to one Mr. O'Brien. An examination of the bill fails to disclose that he testified to the contents of the message, so the assignment is complaining of something that is not shown to have occurred.

[11] The testimony complained of in the thirteenth assignment is inadmissible. It

was testimony by Payne of a conversation which he heard take place between the conductor of his train and some employé of the Orient's receivers, relative to the cause of the wreck, which delayed the shipment. The conversation was clearly inadmissible, as the party making the statement was not shown to have any authority to make the same. He was shown merely to be an employé and that he had something to do with the road.

[12] The fourteenth assignment is that the first issue submitted imposed a higher duty upon defendants than the law requires. The issue reads:

"Was the shipment of cattle in question handled by the railway companies with a reasonable degree of care and caution?"

The objection urged is without merit. It was the duty of the defendants to handle the cattle with a reasonable degree of care and caution. We are not to be understood as holding that this issue was not otherwise subject to exception. We are confining ourselves to the particular exception urged.

[13, 14] The fifteenth assignment complains of the submission of the fourth issue because there was no evidence of what was an ordinarily reasonable time for the transportation of cattle from Marathon to Hardy. In support of the assignment, it is stated that there is no evidence upon the issue. This statement of fact is not contested by appellees, and we will assume it is true. Rule 41 ( 142 S. W. xiv). It thus follows that the issue should not have been submitted.

[15] The objection urged to the fifth issue was too general, for which reason the sixteenth assignment is overruled.

[16] The twenty-third assignment complains of the refusal of this charge:

"You are instructed that, when the train conveying the cattle in question came back to Benjamin from Crowell Water Tank, the receivers of the railway company then operating the road were required by the federal statutes to give the train crew operating said train not less than ten hours' consecutive rest; that is to say, that said train crew would not again operate said train until they had such period of rest."

It was properly refused, because it was irrelevant and would have been of no service to the jury in passing upon the issues submitted to it.

[17, 18] Special charge No. C was argumentative and properly refused for that reason. The twenty-fourth assignment is therefore overruled.

The twenty-fifth assignment is overruled because charge C-1 was argumentative and upon the weight of the evidence.

Special charge No. D was argumentative and upon the weight of the evidence and properly refused.

Special charges Nos. F and H were argumentative and properly refused.

The seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, and thirtieth assignments are regarded as being without merit, and are overruled.

Reversed and remanded for the reasons indicated.