**BOST v. BIGGERS BROS. et al.　(No. 1672.)**

(Court of Civil Appeals of Texas. Amarillo. June 23, 1920.)

1. **Mines and minerals ⬅78(1)—Provision for development, not satisfied by efforts to secure third parties to do so.**

Where a contract for the lease of oil lands expressly binds lessee to begin actual development of the oil property, such obligation is not discharged by making reasonable efforts to secure third parties to develop the land.

2. **Mines and minerals ⬅58—Consideration of $1 for oil lease covering 2,000 acres held not inadequate.**

One dollar a year, paid upon the execution and delivery of an oil lease covering 2,000 acres, *held* not so inadequate a consideration as to suggest fraud.

3. **Appeal and error ⬅527(1)—Refusal to submit special issues must be presented by bill of exceptions.**

Refusal to submit special issues in a suit to cancel an oil lease cannot be reviewed by the Appellate Court without a bill of exceptions under Vernon's Sayles' Ann. Civ. St. 1914, arts. 2061, 2062, art. 2058, being controlling, and the mere fact that the court's indorsement upon objections and exceptions recites that a bill was allowed is insufficient.

4. **Exceptions, bill of ⬅7—Exceptions to refusal to submit special issue held too general to be considered.**

A bill of exceptions, based on refusal to submit special issue, stating that "the charge is

incomplete and fails to submit to the jury material issues raised by the pleading and testimony and covered by issues requested on the part of" appellant, is too general to be considered.

**5. Mines and minerals ☞78(7) — Lessee's financial inability to develop oil property held properly excluded.**

In a suit to cancel an oil lease, where plaintiff contended that part of the consideration consisted of actual development of the land by lessee, it was not error to exclude testimony that the lessee was not financially able to put down a well on the land, where it appeared that plaintiff fully understood lessee's financial inability at the time of the execution of the lease.

**6. Mines and minerals ☞78(7)—Refusal to develop held not to avoid lease containing alternative rental provision.**

Where an oil lease provides for the sinking of a well by lessee within a stated time, and gives lessee the alternative of paying a stated rental annually, refusal on the part of lessee to develop does not, as a matter of law, avoid the contract.

Appeal from District Court, Carson County; W. R. Ewing, Judge.

Suit by John Q. Bost against Biggers Bros. and others. Decree for respondents, and complainant appeals. Affirmed.

S. E. Fish and C. E. Gustavus, both of Amarillo, for appellant.

F. P. Works, of Amarillo, for appellees.

HALL, J. The motion has called to our attention some matters shown by the record which we overlooked, and some inaccuracies in the statement of the rules of law governing cases of this character, and in order to correct these the cause will be again fully considered and the original opinion withdrawn. The object of this suit is to cancel an oil and gas lease executed by appellant to appellee, upon certain land situated in Hutchinson and Carson counties. With slight immaterial changes the lease is what is commonly known as "Producers Form No. 88." The appellant alleged, in substance, that he was about 60 years of age when the lease was executed, was feeble in mind and body, is and has been a farmer and laborer all of his life, and wholly unacquainted with and unaccustomed to transacting business matters of complicated character. That the lands described are located in a section of country pronounced by experts as having indications of oil and gas and highly promising territory for development of these minerals; that at the time of the execution of the lease and ever since said lands have a high rental value, and that the same are constantly and rapidly advancing in price; that on March 14, 1917, the defendants, with knowledge of said facts, secured an oil and gas lease from him, by pretending and representing that they would develop his lands, and that plaintiff would realize large profits therefrom in the way of royalty, expressly representing and stating that a well would be put down and the said lands developed within a short time. He further alleges that they stated that such lease woud be only for 1 year, unless a well was put down within that time, and, having confidence in their statements and representations, he executed said lease for a consideration of $1; that the lease as executed is for a period of 5 years, containing a provision for renewal thereof during said period of time, upon the payment of $1 every 12 months; that the lease is void, is a cloud upon plaintiff's title, and should be canceled for the following reasons:

"(a) The said contract of lease is without consideration, the said sum of $1 therein specified being only nominal, and bearing no relation to the real lease value of said lands.

"(b) Said contract is unilateral, imposing no duties or obligations whatever upon the defendants, and containing no requirement for putting down a well or developing said land in any manner.

"(c) Said contract is unreasonable and unconscionable, in that it grants defendants the right to hold and speculate upon the lease value of plaintiff's land, which is now from $5 to $10 per acre, without the payment to plaintiff of anything except $1 each 12 months for annual renewal thereof.

"(d) Before signing and executing same said contract was read to plaintiff by one of the defendants, who falsely and fraudulently read the same as expiring on March 14, 1918, unless renewed on or before said date, which said lease as now recorded fixes the expiration date as March 14, 1919. That said lease was either falsely read to him or had been changed since its execution. That such change was made either through fraud, accident, or mistake, and plaintiff is entitled to have same reformed so as to show the expiration date to be March 14, 1918. That defendants did not renew said lease by depositing the $1 under the terms of the contract until the time had expired; such deposit being made March 16, 1918, when the contract, according to its true terms, expired March 14, 1918.

"(e) That plaintiff did not understand and was incapable of understanding the purported terms of the lease, and did not know or understand that he was granting to defendants the full leasehold estate for a period of 5 years for a consideration of $1 per year, without any obligation on the part of appellees to put down a well or make any development; otherwise he would not have executed the same.

"(f) That the defendants have not the means and financial ability to develop land, and have never intended to do so, but fraudulently pretended that they would develop said land for the sole and only purpose of procuring such lease.

"(g) That a reasonable time has transpired for developing and testing said lands, and the defendants have no intention of developing the

same at any time in the future, but are merely seeking to hold said lands for speculation.

"(h) That plaintiff has requested and demanded a release and cancellation of the lease, and has refused to accept the last deposit of $1, placed to his credit in the bank.

"(i) Plaintiff has heretofore tendered and now here tenders to defendant the $1 originally paid to him."

The substance of defendant's amended answer, upon which the case was tried, in addition to the general demurrer, general denial, and setting out practically the material terms of the contract, is an allegation of the payment and deposit of the $1 consideration, in accordance with its terms. They further allege, in substance, that although not expressed in writing, it was in fact understood and agreed between the parties that the lessees should and would use their best efforts to secure development of said lands within the time limited by the contract; that prior to the contract there had been no development whatever attempted near the premises, and that the territory was what is known as strictly "wildcat territory," that the lessees did in good faith and with all possible diligence strive to make arrangements for exploration and development of the land in connection with other lands held by them under lease in that neighborhood, which they had secured for a like purpose; that in their efforts to secure development, they conveyed their interest in other leases in that neighborhood to prospective drillers; that on account of war conditions existing since the 6th day of April, 1917, and within less than a month after the execution of the lease, which conditions have existed to the present with but slight change, they have been unable to secure the means, machinery, and material with which to prosecute development; that Millie Biggers and Zack Biggers, two of the defendants herein, were both within the draft age; that Zack Biggers entered the army about the 17th day of June, 1917, and has been in the service continually ever since; the said M. W. Biggers being excused because of having certain dependent relations to support; that plaintiff is estopped from claiming that the lease contract was for only 1 year, and has waived any additional payment and the right to forfeit the same on account of defendant's failure to make the second payment promptly, in this, that during the summer of 1918, and the first year, plaintiff not only permitted, but encouraged the lessees in their further efforts to develop the land and in incurring further expense looking to the development of said land, and knowingly permitted them to assign the leasehold interest held by them in other lands to prospective drillers, which said leaseholds so conveyed were of the reasonable value of about $500; that by such act on the part of plaintiff, with the knowledge of defendants' efforts, expenditure of money, and assignment of leasehold interests, he has ratified and confirmed said lease contract, and waived any of the alleged rights to forfeit the same; that on or about the 31st day of August, 1918, while their lease was in full force and effect, and while they, with the knowledge and approval of plaintiff, were making all possible effort to secure development, plaintiff executed to third parties a subsequent lease upon the same lands, which said lease was immediately recorded in both Carson and Hutchinson counties, whereby a cloud was cast upon the leasehold interest of defendants, and their further progress toward development was materially interfered with and rendered practically impossible; that having by his own act prevented successful development, plaintiff cannot now be heard to complain of defendant's default. The court submitted the cause to the jury upon three special issues, which, with the answers, are as follows:

"(1) Was or not the provisions of the lease contract involved herein as to the time the first renewal thereof might be had misread or misstated by defendant Less Whittaker, to plaintiff as to same being 1 year instead of 2 years?" Answer: "No."

"(2) If you answer the foregoing question in the affirmative, then state whether or not the plaintiff was deceived thereby and was thereby induced to sign said contract." Answer: "No."

"(3) Was the plaintiff capable and capacitated to read and understand the lease contract in question at the time of its execution?" Answer: "Yes."

The court further submitted a special issue, inquiring whether or not more rapid exploration and development of the land was prevented by war regulations, the violation of which would have involved punishment of the offender by the government. Upon this issue the jury disagreed and failed to return an answer. Judgment was entered for appellees upon the verdict so returned.

[1] The lease in this case, under the jury's findings, provides that in lieu of development after the first 2 years the lessee shall pay $1 annual rental for the whole tract of land, consisting of about 2,000 acres, during the remainder of the term. The contract does not require the payment of any sum by the lessees in the event they should desire to surrender the lease before the expiration of the 5-year time; neither does it expressly require the lessees to begin development at any time. There is no evidence in the record showing that at the time the lease was procured the land had any value as oil or gas producing property, although it is shown that at the time of the trial, 2½ years later, it had a value of $3 to $6 per acre. The testimony of lessee tended to show they had made reasonable efforts to secure third parties to develop the land, but this would

not discharge an obligation on their part to begin actual development if the contract expressly bound them to do so.

[2] Appellant insists that the $1 consideration paid at the time of the execution and delivery of the lease was in fact no consideration, being nominal, and is not a sufficient and adequate consideration to support the lease. This court has recently considered this question in several cases, and in McKay v. Tally et ux., 220 S. W. 167, and Nolan et ux. v. Young, 220 S. W. 154, announced the conclusion that $1 was a sufficient consideration to support an option contract of this character. We cannot say from the record that the consideration originally paid or to be paid for the renewal of the lease annually is so inadequate as to suggest fraud.

Appellant requested the submission of three special issues, the first being:

"Is the lease contract in question, in its terms and provisions as to plaintiff, unreasonable and unconscionable?

"(2) Did the defendant, prior to the execution of the written lease contract, represent and lead the plaintiff to believe that they would start putting down an oil or gas well within 12 months after date of the lease contract?

"(3) Was the sum of $1, stipulated in the lease contract in question, a valuable consideration as distinguished from a nominal consideration?"

These special issues were refused by the court. It appears from the record that appellant filed objections and exceptions to the court's charge, the fourth subdivision being as follows:

"The charge is incomplete, and fails to submit to the jury material issues raised by the pleading and testimony and covered by issues requested on the part of plaintiff."

The court's indorsement upon the objections and exceptions shows that it was duly presented to opposing counsel and the trial court, that the exceptions were overruled, and that plaintiff, in open court, excepted to the ruling, and recites:

"And plaintiff is hereby allowed this as his bill of exception, to said action of the court."

[3] As we understand the practice, this ruling of the court, if error, is not properly before us for review. Article 1974 (as amended by Acts Thirty-Fifth Leg. p. 389), V. S. C. S., and Supplement, relate to charges and special instructions. The practice with reference to the submission of special issues is governed by V. S. C. S., arts. 1984a, 1985. A special issue which has been requested and refused by the court is not a part of the record on appeal in the sense that the action of the court must be reviewed by the appellate court without a bill of exceptions under V. S. C. S. arts. 2061, 2062. In such case article 2058, V. S. C. S., controls. Texarkana & Ft. S. Ry. v. Casey, 172 S. W. 729; Tex.

L. A. v. Fleming, 18 Tex. Civ. App. 668, 46 S. W. 63; Hill v. Hill, 193 S. W. 727.

[4] If the objections and exceptions which the trial judge, by indorsement, converted into a bill of exception may be considered as such, the fourth subdivision quoted above is too general to be considered. M., K. & T. Ry. Co. of Texas v. Churchill, 171 S. W. 517; K. C., M. & O. Ry. Co. v. Corn, 186 S. W. 807; Morris v. McSpadden, 179 S. W. 554. We agree with appellant that it is a hard rule which will permit lessees of approximately 2,000 acres of land to procure a lease for the first 2 years for a consideration of $1 and maintain the option in force by the annual payment of $1 for the remaining 3 years without any definite promise to develop the land at any time during the 5-year term, but it is not the province of the court to make contracts. Under the weight of authority we would not be justified in declaring the lease void upon the ground of inadequacy of consideration. There is nothing in the record to show that any development was going on upon other lands anywhere within the vicinity of the land in question, and it appears that the parties negotiated for several days, making one trip to inspect the premises before the deal was closed. The appellant testified that during the negotiations, prior to the execution of the lease, the appellees said they expected to sell leases to put down a well, and hoped to sell them to railroad men around the shops. He further testified:

"They spoke about leasing land and would try to get a well. * * * We discussed that it would take a lot of money and time to develop, and they discussed the drilling and cost of it among themselves, and that it took a lot of acreage in wildcat territory to get a drilling contract. * * * I do remember that they said it would take a lot of money and time to get a drilling contract, and we understood that steel and machinery were hard to get hold of. * * * They also discussed at the same time other leases to help this drilling, and they made efforts to get others, and I assisted them in locating some of these leases. * * * They wanted about 5,000 acres. * * * They thought they could get a driller for what I and Mrs. Dunaway had, and I thought so too. There were two sections of the Dunaway land, and that, added to my 22, makes 3,200 acres, but I have understood from other parties that there was some kind of a muddle over that land. * * * On the first trip appellees spoke of selling stock in order to get money to drill."

From this testimony it appears that appellant understood that the development of the land which all the parties testified was the real consideration depended upon securing at least 5,000 acres, and that early development, even with that number of acres, was doubtful. The fact that the land 2½ years later may have a lease value of $3 to $6 per acre is foreign to the issue. It is held and so stated by this court in the Talley Case,

supra, that unless the consideration is so grossly inadequate as to suggest fraud, a court of equity should not declare the contract void on that ground. In the light of the surrounding circumstances, at the time when the contract in question was executed, we are not prepared to say that the price was so grossly inadequate as to suggest fraud. The issue of fraud was decided against appellant. It may be that appellant's pleadings are sufficiently full to raise the issue of abandonment by the lessees, and there is some evidence tending to support the contention. The matter is not before us for consideration, however, as appellant did not request that the issue be submitted to the jury. The question is waived in this court by a proposition urged under the third assignment of error. This assignment is predicated upon the refusal of the court to direct a verdict for appellant, and the proposition is therefore not germane to the assignment, as it does not present fundamental error.

[5] Appellant's first and second assignments of error are based upon the court's action in refusing to permit him to prove that the defendants were not financially able to put down a well upon the land. The testimony above quoted shows that appellant fully understood the financial inability of appellees at the time of and prior to the execution of the lease, and was informed by the lessees that they must secure, in all, leases upon about 5,000 acres of land, and sell the stock in order to secure the money for development. The contention under these assignments we think is disposed of by the case of Griffin v. Bell, 202 S. W. 1037, in which it is said:

"The state of the evidence in this case was such as to sustain a finding that the contract was executed under circumstances free from fraud, and that all of the parties signed it with a fair understanding of its provisions. It gave the lessees the liberty of assigning their rights to third parties. The fact that they acquired the option granted with no intention of then drilling for minerals, but with a view of selling that privilege at a profit is no ground for cancellation. They had not bound themselves to sink wells, and they violated no agreement by failure to do so."

[6] There are a number of propositions urged under the third assignment, which have been disposed of by what has heretofore been said. If the lessees had bound themselves to sink a well within a given time, less than 5 years, and had failed, the right to cancel the contract would be clear, but the alternative is given them of paying the $1 rental annually, and thereby postponing development to the end of the term. In view of this provision a failure or refusal on the part of appellees to develop does not, as a matter of law, avoid the contract. While the comparatively small money consideration presents an extreme case, we cannot, under the authorities, go further than to sustain the implied holding of the trial court, the effect of which is to declare the consideration valuable and adequate.

It seems that the lease contract was executed in duplicate or possibly triplicate originals, and the one delivered to appellant is sent up as an original paper with the statement of facts. The blanks were filled with a typewriter and by the use of carbon, and it is difficult to determine from this copy whether the lessees are given until March 1, 1918, or 1919, in which to commence a well, but it appears from the statement of facts that the other copies of the lease made at the same time show this date to be 1919. The effect of this is to grant appellees a 2-year lease upon payment of $1 before they would be required to begin operations in order to prevent a forfeiture. In this connection it may be stated that the jury found that Whittaker correctly read the lease to appellant.

Under the eighth assignment it is contended that the verdict is insufficient to support the judgment because the jury failed to agree upon the special issue submitted at appellant's request, inquiring whether or not more rapid development was prevented by war regulations. This issue was based upon one of the defenses urged by the appellees, and in view of the condition of the record it is an immaterial matter to appellant. If the $1 consideration is a valuable one, even though the answer to this issue had been in appellant's favor, it could not affect the result.

The remaining assignments present no reversible error, and the judgment is affirmed.