## COCKERELL v. GRIFFITH et al.
### (No. 8408.)

(Court of Civil Appeals of Texas. Galveston. Nov. 11, 1923.)

**1. Acknowledgment ⬤⇒62(4)—Certificate not overcome by testimony of party and slight corroboration.**

The testimony of the party whose acknowledgment is purported to be certified, when unsupported by other evidence, is insufficient to overcome the certificate of the officer; nor will a slight corroboration of the party's testimony falsify the certificate.

**2. Acknowledgment ⬤⇒55(2)—Certificate to separate acknowledgment by married woman conclusive, in absence of proven fraud.**

The certificate of the officer to the separate acknowledgment of the wife to a deed of conveyance is conclusive of the facts required to be and which are stated in the certificate, in the absence of allegation and proof of fraud or imposition.

**3. Mines and minerals ⬤⇒55(1)—Money valuable consideration, supporting deed of mineral rights, in absence of showing of value of rights.**

Twenty-five dollars paid is valuable consideration, which will support a conveyance of the mineral rights in lands, at least in the absence of a showing that such rights had any particular market value.

**4. Mines and minerals ⬤⇒55(1) — Mutual promises necessary only where there is no other consideration.**

Conveyance of mineral rights for $25 paid, and a promise to pay more if mineral be discovered, is not invalid for want of mutuality

because of absence of promise' to explore for minerals; mutuality of promises being necessary for a contract only where there is no other consideration.

Appeal from District Court, Grimes County.

Action by B. G. Griffith and another against E. Cockerell, for cancellation of a deed of minerals. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Buffington & Leigh, of Anderson, and Gill, Jones, Tyler & Potter, of Houston, for appellant.

J. M. Brownlee, of Madisonville, and S. W. Dean, of Navasota, for appellees.

LANE, J. W. A. Colburn and wife, Sallie Colburn, on the 8th day of March, 1917, and long prior thereto, were the owners of 100 acres of land in Grimes county, Tex., upon which they resided as their homestead.

Theretofore, to wit, on the 3d day of August, 1915, Colburn and wife had executed and delivered to appellant, E. Cockerell, a certain lease to run for the term of five years, by the terms of which they conveyed to him all the oil, gas, and other minerals under said land, except a one-eighth royalty, which was specifically reserved. This said lease passed by mesne conveyances to the Empire Gas & Fuel Company.

On the 8th day of March, 1917, Colburn and wife executed and delivered to appellant, E. Cockerell, a conveyance reading as follows:

"W. A. Colburn and wife to E. Cockerell. Mineral Deed.

"State of Texas, County of Grimes:

"Know all men by these presents: That we, W. A. Colburn and wife, Sallie Colburn, of the aforesaid county and state, representing and covenanting that we own, and have a valid right to sell, the hereinafter described land, in consideration of the sum of twenty-five and no/100 ($25.00) dollars cash, to us in hand paid by E. Cockerell, receipt whereof is hereby acknowledged, and the further consideration of the sum of twenty-five hundred ($2,500) dollars to be paid to us, when oil is produced and marketed from said land, out of one-half of the royalties, as fast as produced thereon, have and do by these presents hereby grant, bargain, sell, convey and deliver unto the said E. Cockerell, of Harris county, Texas, his heirs and assigns, the fee-simple title to the mineral rights and royalties in and to all that certain tract or parcel of land situated in the aforesaid county and state, bounded as follows, and being out of and a part of the H. T. & B. R. R. Co., survey, Abstract No. 272, to-wit:

"On the north by lands of Thos. Stewart, on the east by lands of F. M. Davis and H. T. & B. R. R. Co., survey, on the south by F. M. Davis, and on the west by the M. Moss survey, being the same tract of land conveyed to W. A. Colburn by F. M. Davis and wife, Lula Davis, by deed dated August 3, 1915, recorded in volume 80, p. 475, of the Grimes County Deed Records, and the same tract of land leased by grantors herein to E. Cockerell, by lease dated August 3, 1915, recorded in volume 81, pp. 502–505, of the Grimes County Deed Records, containing one hundred (100) acres of land, more or less.

"In the event the present lessee, its successor or assigns, fails to drill on said land, or fails to carry out the terms and conditions in said lease, this instrument shall convey the fee-simple title to the entire mineral rights, subject to the additional payment hereinabove provided. There is expressly conveyed to grantee, his heirs and assigns, all the rights of development, operation and maintenance of said leased premises, and the rights of ingress and egress, and the use of as much of the surface as may be reasonably necessary to carry on said operations, develop and operate said property.

"Grantors shall have the right to use, cultivate, enjoy, sell or convey said premises, subject to the leasehold rights herein conveyed, and expressly reserve the surface rights, and the rental payments called for in said lease to E. Cockerell, and said payments shall remain the property of and be paid to grantors named in said lease, their heirs or assigns.

"It is the intention of this instrument to convey the fee-simple title to the royalties and mineral rights in said land, subject to the additional payment when oil is produced, as aforesaid, and without obligation on part of the grantee to drill thereon for oil, gas or other minerals.

"To have and to hold said rights in said premises, together with all and singular the appurtenances thereto in anywise belonging, unto the said E. Cockerell, his heirs and assigns; and we do hereby bind ourselves, our heirs and assigns to warrant and forever defend all and singular, the said premises unto the said E. Cockerell, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands, on this the 8th day of March, 1917.          W. A. Colburn.
                                    "Sallie Colburn.

"State of Texas, County of Grimes.

"Before me, the undersigned authority, in and for the aforesaid county and state, on this day personally appeared W. A. Colburn and Sallie Colburn, his wife, known to me to be the persons whose names are subscribed to the foregoing instrument, and they each separately acknowledged to me that they executed the same for the purposes and consideration therein expressed; and the said Sallie Colburn, wife of the said W. A. Colburn, having been examined by me privily and apart from her said husband, and having said instrument by me fully explained to her, she, the said Sallie Colburn, acknowledged the same to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

"Given under my hand and seal of office, on this the 8th day of March, A. D. 1917. F. M. Davis, Notary Public in and for County of Grimes, State of Texas."

This conveyance was duly recorded on the 6th day of December, 1917.

On the 4th day of December, 1917, Colburn and wife, by their deed of that date, conveyed said 100 acres of land to M. M. Morris. Some two or three years later M. M. Morris sold said land to M. A. Morris, and thereafter M. A. Morris sold the same to appellee B. G. Griffith. At the time Colburn and wife sold said land to M. M. Morris they told him that they had sold all the minerals thereunder to appellant, Cockerell.

On the 7th day of January, 1912, B. G. Griffith and wife, Maggie Griffith, and the Empire Gas & Fuel Company brought this suit against appellant, Cockerell, praying for the cancellation of the mineral deed executed by Colburn and wife to E. Cockerell on the 8th day of March, 1917. By request of the Empire Gas & Fuel Company it was dismissed from the suit before trial, and the cause was thereafter prosecuted by appellees Griffith and wife.

For cause of action appellees alleged:

(1) That there was no consideration paid by E. Cockerell to Colburn and wife for the execution and delivery of the mineral deed which they seek to cancel, and that the same is unilateral and void.

(2) That, though Mrs. Colburn appeared before the notary for the purpose of acknowledging the instrument, and though the certificate of acknowledgment is in due and legal form, Mrs. Colburn was not in fact privily examined by the notary as required by law, nor did the notary in fact explain said instrument to her, nor did he in fact ask her if she wished to retract her act in signing the instrument.

(3) That the mineral deed was obtained by false representations upon the part of the defendant, E. Cockerell, as to the contents of the instrument in two respects, viz.: That the instrument constituted merely a conveyance of the one-eighth royalty interest reserved in an existing lease, and that Cockerell's right would expire with the lease, and that, if oil or gas was discovered on the premises during the life of the lease aforesaid, Cockerell would immediately pay to Colburn and wife the sum of $2,500 in cash, whereas, in point of fact, the instrument constituted a conveyance of all mineral rights in the land, subject to the existing lease, and provided for the payment of $2,500 out of one-half of the royalty oil and gas thereafter produced and marketed from the land.

(4) That plaintiffs and their predecessors in title under Colburn and wife were purchasers in good faith of the land in question, paying value therefor, without notice or knowledge of the existence of the fraud practiced upon Colburn and wife, and without notice or knowledge of the legal nature and effect of the mineral deed of date March 8, 1917, aforementioned.

By the eleventh paragraph of their petition they offer to pay into court for the benefit of the defendant, Cockerell, if he will accept same, all sums of money paid by him to Colburn and wife for the execution of the deed sought to be canceled.

The defendant, Cockerell, answered by general denial and cross-action to remove cloud from his title.

The case was tried before the court without a jury, and judgment was rendered canceling the deed in question as prayed for by the plaintiffs. In response to defendant's demand, the court filed his findings of fact and conclusions of law.

The findings of fact and conclusions of law, pertinent to the issues involved on this appeal, filed by the trial judge are as follows:

"(4) Sallie Colburn, the wife, at the time she signed said mineral transfer and when she acknowledged the same, did not understand that it was a perpetual transfer of the mineral rights and the instrument was not explained to her by F. M. Davis, as required by law, the person who took her acknowledgment, and F. M. Davis himself did not understand that it was a perpetual transfer of the mineral rights.

"(5) F. M. Davis, the notary public, did not ask the wife whether she wished to retract it.

"(6) The cash consideration of $25 named in said instrument was paid by E. Cockerell to W. A. Colburn at the time the same was signed.

"(7) E. Cockerell, the grantee in said instrument, had explained the contents of the same to F. M. Davis and did not correctly explain the same.

"(8) E. Cockerell was present when the acknowledgment was taken and knew just how they were taken by the notary public."

"Conclusions of Law.

"The mineral transfer in controversy is unilateral and void."

Appellant has, in proper manner, attacked such findings of fact and conclusion of law, and insists that there is no evidence to support any of said fact findings except the sixth; that there are neither facts nor law to support the conclusion of the court that the mineral deed of Colburn and wife to appellant is unilateral and void, and that in such circumstances this court should reverse the judgment rendered and render judgment for appellant.

We feel constrained to sustain the contention of appellant. There was no evidence to sustain the finding of the trial court that at the time Mrs. Colburn signed the instrument in controversy, and when she acknowledged the same, it had not been explained to her by the notary who took her acknowledgment, or that said notary failed to ask her if she wished to retract her act in signing said instrument. But, to the contrary, the undisputed evidence, we think, shows that the

notary complied in every respect with the law, as stated in his certificate.

The effect of the testimony of Mrs. Sallie Colburn with reference to the acknowledgment of the mineral deed, when considered as a whole, is that the notary examined her separate and apart from her husband; that he explained the instrument to her; asked her if she had willingly executed the same, and whether or not she wished to retract it; that she answered the first question, "Yes," and the second, "No." She also testified that she understood that she was selling all the mineral rights she owned in the land, which she thought was a one-eighth royalty only, as she had already sold seven-eighths thereof by the former lease.

F. M. Davis, the notary, testified that he took the privy acknowledgment of Mrs. Sallie Colburn to the deed in question; that he explained the same to her; that he satisfied himself that she understood the same; that after explaining the deed to Mrs. Colburn he asked her is she understood it and if she had signed if of her own free will; that he could not now remember what questions he asked her when he took her acknowledgment; that he could not remember whether he asked her if she wished to retract her act in signing the deed, but that he had taken a hundred acknowledgments and in every case had asked that question, and that to the best of his recollection he did ask Mrs. Colburn if she wished to retract her act after she had signed the deed.

These were the only witnesses who testified with reference to the manner in which the acknowledgment was taken.

[1] If, however, the testimony of Mrs. Colburn as a whole can be construed as an attack on the certificate of the notary, which is in every respect in legal form and made by an officer in the performance of his duty under the sanction of an oath, we are still of the opinion that such testimony is insufficient to falsify said certificate. It is well settled by the great weight of authority that the testimony of the party whose acknowledgment is purported to be certified, when unsupported by other evidence, is insufficient to overcome the certificate of the officer. Ford v. Ford, 27 App. D. C. 401, 6 L. R. A. (N. S.) 442; Grey v. Law, 6 Idaho, 559, 57 Pac. 435, 96 Am. St. Rep. 280; Ogden Bldg. Ass'n v. Mensch, 196 Ill. 554, 63 N. E. 1049, 89 Am. St. Rep. 330; Gribben v. Clement, 141 Iowa, 144, 119 N. W. 596; Kerr v. Russell, 69 Ill. 666, 18 Am. Rep. 634.

Nor will a slight corroboration of the testimony of such acknowledging party falsify the certificate. Rouse v. Witte, 81 Neb. 368, 116 N. W. 43; Tunison v. Chamblin, 88 Ill. 378.

[2] It seems to be the general doctrine of the courts of Texas that the certificate of the officer to the separate acknowledgment of the wife to a deed of conveyance is con-

clusive of the facts required by law to be stated, and which are stated in the certificate, except in cases where there are allegations and proof of fraud or imposition. Kocourek v. Marak, 54 Tex. 201, 38 Am. Rep. 623; Hartley v. Frosh, 6 Tex. 216, 55 Am. Dec. 772; Shelby v. Burtis, 18 Tex. 651; Williams v. Pouns, 48 Tex. 146; McGee v. Tinner, 61 Tex. Civ. App. 347, 129 S. W. 866.

There was, as already stated, no proof that any fraud or imposition was practiced on Mrs. Colburn to induce her to acknowledge the deed in question. Both she and the officer who took her acknowledgment testified that no such fraud or imposition was practiced upon her.

The following rule is announced in volume 1, § 88, p. 297, R. C. L.:

"The decisions disclose a very decided tendency on the part of the courts to attach weight to certificates of acknowledgment and to view attempts to discredit them with suspicion and distrust. It frequently has been stated as a rule that in order to impeach a certificate the evidence must be clear, cogent, and convincing beyond reasonable controversy"—citing Pickens v. Knisely, 29 W. Va. 1, 11 S. E. 932, 6 Am. St. Rep. 622.

In Kerr v. Russell, supra, in speaking of an attempt to impeach the certificate of a notary, it is held that the unsupported testimony of a party to an instrument, that he did not execute it, will not prevail over the official certificate of the officer taking the acknowledgment thereof, and in that case it is said:

"It shocks the moral sense of community to say the unsupported testimony of an interested witness, who sees a fortune in his success, shall destroy the deliberate act of an officer appointed by law to do the act he certifies, under the solemn sanctions of an oath, he has done. Such is not the law, such is not justice, and such a rule would throw land titles into chaos."

Applying the rule above stated, it is clear that there was no evidence to support the finding of the court that the deed in question was not acknowledged by Mrs. Colburn in manner and form as required by law.

There was no evidence to support the allegation of the plaintiff that appellant Cockerell had obtained the execution of the deed in question by means of false representations of its contents made to Colburn and wife, or to either of them; nor is there any finding of the court that any such representations were made. It is therefore not necessary for us to discuss this contention of appellee.

[3, 4] We must also sustain appellant's contention that the court erred in concluding that the deed in question is unilateral and void, for there is no fact shown by the record which under the law would make it void

for want of either consideration or mutuality; nor is it, as before stated, void for the want of a legal acknowledgment by Mrs. Colburn.

The deed sought to be canceled is an absolute conveyance of the fee-simple title to the minerals in the land in question for a paid consideration of $25, and for the further promise on the part of the grantee that if at any time he should take oil from said land he would pay the grantors the further sum of $2,500 out of one-half of the royalties as fast as produced and marketed. While we do not understand just what is meant by the word "royalties" as used in said deed, we find that it was expressly stipulated therein that the fee-simple title to the royalties and the mineral rights in said land were conveyed, and that the $2,500 was to be payable only in the event the grantee produced oil from the land sufficient in quantity and value to pay same, and that grantee was not to be under any obligation to drill for oil, gas, or other minerals.

There is no evidence tending to show that the mineral rights conveyed had any greater market value than $25—for that matter, any value whatever, or that minerals of any value had at any time been discovered in the locality of said land.

Under these circumstances, how can it be contended that the $25 shown to have been paid was not a valuable consideration for the execution and delivery of the deed? It has been held in several cases in Texas that $1 was a valuable consideration and sufficient to support a conveyance of mineral rights in land where, as in this cause, there was no showing that mineral rights in the land had any particular market value, that is, where such lands were proven mineral lands. So. Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169; McKay v. Tally (Tex. Civ. App.) 220 S. W. 167; Nolan v. Young (Tex. Civ. App.) 220 S. W. 154; Bost v. Siggers (Tex. Civ. App.) 222 S. W. 1112.

The $25 cash paid by Cockerell to Colburn and wife was, as has been shown, a valuable and, so far as we are advised, an adequate consideration for the rights conveyed, and though the grantee did not bind himself to exercise his option or right to explore for minerals, or to do anything toward developing the mineral resources of the land, the contract was not subject to cancellation on account of want of mutuality, since mutual promises are necessary only where there is no other consideration. Griffin v. Bell (Tex. Civ. App.) 202 S. W. 1034.

Upon trial in the lower court the cause seems to have been fully developed, and therefore, for the reasons pointed out, the judgment of the trial court is reversed, and judgment is here rendered for appellant.

Reversed and rendered.